**EXHIBIT A**

**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

| | | |
|---|---|---|
| JIMMY HALL<br>as Co-Guardian of the Person and Property of<br>RASHAWN WILLIAMS, a disabled adult<br>11717 Devilwood Drive<br>Potomac, Maryland 20854<br><br>and<br><br>CHRISTINA HALL<br>as Co-Guardian of the Person and Property of<br>RASHAWN WILLIAMS, a disabled adult<br>11717 Devilwood Drive<br>Potomac, Maryland 20854<br><br>Plaintiffs,<br>v.<br><br>WEACHIEVE, INC.<br>10501 New Hampshire Ave.<br>Silver Spring, MD 20903<br><br>and<br><br>WASHINGTON METROPOLITAN AREA<br>TRANSIT AUTHORITY<br>300 7th Street, SW<br>Washington, DC 20024<br><br><u>Serve Agent:</u><br>Office of General Counsel<br>c/o Patricia Lee, Esq.<br>General Counsel<br>600 5th Street, Northwest<br>Washington, DC 20001<br><br>Defendants. | * * * * * * * * * * * * * * * * * * * * | Case No. C-15-CV-25-005213 |

* * * * * * * * * * * * *

**AMENDED COMPLAINT AND JURY DEMAND**

COME NOW, the Plaintiffs, Jimmy Hall and Christina Hall, as Co-Guardians of the

Person and Property of Rashawn Williams, by and through counsel, Timothy F. Maloney, Bridget Cardinale, Esq., and Joseph, Greenwald & Laake, P.A., and hereby file this Amended Complaint in accordance with Md. Rule 2-341(a), and submit their claims against the Defendants, WeAchieve, Inc. and Washington Metropolitan Transit Authority ("WMATA"), and for cause therefor state as follows:

**JURISDICTION & VENUE**

1. This Court has jurisdiction over this matter pursuant to Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 1-501, which grants the Circuit Courts original jurisdiction over all civil actions in law and equity in which the amount in controversy exceeds $30,000, exclusive of interest and costs.

2. Venue properly lies in Montgomery County pursuant to Md. Code Ann., CJP § 6-201.

3. The above-titled action was originally filed in the Health Care Alternative Dispute Resolution Office ("HCADRO") on February 07, 2025. Pursuant to Md. Code Ann., CJP § 3-2A-06B, Plaintiffs filed an Election to Waive Arbitration on July 25, 2025. A copy of Plaintiffs' Election and a copy of the HCADRO's Order of Transfer are attached hereto and incorporated by reference as Exhibits 1 and 2, respectively. Having waived arbitration for their claims against WeAchieve, Inc., the Plaintiffs now file this claim before this Honorable Court.

4. In accordance with Md. Code Ann., CJP § 3-2A-04 and applicable Maryland law, Plaintiffs filed with HCADRO two Certificates of Qualified Expert, each with an accompanying report, attached hereto as Exhibit 3 and 4.

5. Plaintiffs initiated the above-captioned action by timely filing their Complaint and Jury Demand on September 19, 2025.

**PARTIES**

6. Rashawn Williams is an adult citizen of the State of Maryland, presently residing at 11717 Devilwood Drive, Potomac, Maryland 20854. Rashawn Williams is under a mental disability and requires round-the-clock supervision. He has Downs Syndrome and is non-verbal.

7. Jimmy Hall is the natural father of Rashawn Williams, disabled. Jimmy Hall is an adult citizen of the State of Maryland, residing at 8636 Fountain Valley Drive Gaithersburg, Maryland 20866.

8. Christina Hall is the step-mother of Rashawn Williams, disabled. Christina Hall is an adult citizen of the State of Maryland, residing at 8636 Fountain Valley Drive Gaithersburg, Maryland 20866.

9. Jimmy Hall and Christina Hall were appointed Co-Guardians of the Person and Property of Rashawn Williams on August 23, 2024 by the Circuit Court for Montgomery County, Maryland.

10. The disabled Plaintiff, Rashawn Williams, brings this action by and through his Co-Guardians, Jimmy Hall and Christina Hall.

11. On information and belief, Defendant WeAchieve, Inc., formerly known as CHI Centers, Incorporated, is a Maryland corporation, which at all times pertinent, held itself out as facility licensed by the Maryland Development Disabilities Administration that, through its agents, servants and employees, could and would provide competent care and treatment along with residential services and supervision to adults with intellectual deficits in the State of Maryland, including but not limited to, Rashawn Williams. Its principal office is located at 10501 New Hampshire Avenue, Silver Spring, Maryland 20903.

12. At all times hereinafter mentioned and relevant hereto, WeAchieve, Inc. had responsibility for operating a group home residence at the Residence Inn by Marriott located at 12000 Plum Orchard Drive in Silver Spring, Maryland, its then-temporary location due to damage at its principal office caused by a fire.

13. References hereafter to WeAchieve, Inc. include all of its agents, servants and employees.

14. All of the individuals who provided medical care, attention and supervision to residential clients of the WeAchieve, Inc. location at 12000 Plum Orchard Drive in Silver Spring, Maryland, at all times hereinafter mentioned and relevant hereto, were the employees, agents and/or servants, either actual and/or apparent, of WeAchieve, Inc. and were acting within the scope of their employment and in furtherance of the business of WeAchieve, Inc. in rendering care to the disabled Claimant, Rashawn Williams, and other disabled residents. As such, Defendant WeAchieve, Inc. is vicariously responsible for the negligent acts and omissions of all such individuals under the doctrine of *Respondeat Superior*.

15. Defendant WMATA is a governmental body created by interstate compact, established pursuant to the laws of the District of Columbia, State of Maryland, and the Commonwealth of Virginia. WMATA receives federal funding and operates in Maryland at the Carmen Turner Facility located at 350 Pennsy Drive, Hyattsville, Maryland 20001, among other locations in the State.

16. References hereafter to WMATA include all of its agents, servants and employees.

**FACTS RELEVANT TO ALL CLAIMS**

17. Plaintiffs hereby incorporate Paragraphs 1-16 of this Complaint and Jury Demand with the same effect as if herein fully set forth.

18. On October 20, 2023, the disabled Plaintiff, Rashawn Williams, who requires 24-hour supervision, was at the temporary residence provided by his group home, WeAchieve, Inc.: the Residence Inn by Marriott located at 12000 Plum Orchard Drive in Silver Spring, Maryland.

19. Defendant, WeAchieve, Inc., by and through its agents, servants and employees, was fully aware of Rashawn's supervision requirements. Defendant WeAchieve, Inc. and its agents, servants and employees, for consideration, expressly and impliedly promised to provide the supervision required for the safety and well-being of Rashawn.

20. On October 20, 2023, WeAchieve, Inc. agent and employee Solenge Ble was responsible for supervising Rashawn and three other WeAchieve, Inc. residents, who also had mental and/or developmental disabilities. Ms. Ble was the only staff member on duty at the time of the incident.

21. This level of supervision violated reasonable supervision ratios required by the State and the applicable standard of care.

22. Rashawn and the other residents had recently finished eating dinner. Ms. Ble was putting dinner away when Rashawn indicated to her that he needed to use the restroom.

23. Ms. Ble told Rashawn to wait in front of Room 230 while she would retrieve a key necessary to access the restroom.

24. Ms. Ble then left the area and left Rashawn unsupervised.

25. While unsupervised, Rashawn walked down the hallway he was standing in, and towards the elevator. He entered the elevator and continued to the lobby.

26. Ms. Ble noticed Rashawn leaving the area, but did not follow after him and instead remained with the other residents.

27. Around 6:20 p.m., Rashawn passed the front desk attendant and exited the Residence Inn.

28. Rashawn made his way to the corner of Plum Orchard Drive and Cherry Hill Road and the bus stop located there. He boarded the bus that arrived and that was taking the R2 Route towards Fort Totten.

29. The front desk attendant's view of Rashawn boarding the bus would be the last confirmed sighting of him for six (6) days.

30. At the time, the only clothing Rashawn had with him was the clothing he had on, which was shoes, blue jeans, and a blue long-sleeve shirt. He did not have a phone or any technology on his person to assist with geographical locating.

31. Shortly after Rashawn's disappearance, Ms. Ble called the police, but did not call either of Rashawn's parents or guardians.

32. WeAchieve, Inc. would not notify either Jimmy Hall or Christina Hall about Rashawn's disappearance until 7:39 p.m. – over an hour after he was last seen.

33. Both Jimmy Hall and Christina Hall, as Rashawn's parents, were significantly familiar with his patterns and thought processes and could have been of important help in the immediate time period following Rashawn's disappearance.

34. Further, Jimmy Hall, as a WMATA employee, was knowledgeable of the bus routes, including the R2 Route and would have been able to travel the same Route as Rashawn in the critical time period after his leaving.

35. Around 6:41 p.m., Montgomery County Police Department (MCPD) officers arrived at the Residence Inn in response to Ms. Ble's call for missing person Rashawn Williams.

36. The officers began to search for Rashawn and to notify other agencies for assistance via BOLO (Be On the Lookout) only.

37. Jimmy Hall and Christina Hall, with the assistance of family, friends, and volunteers from the community, took their own efforts to desperately search for their son, such as by distributing flyers and pursuing tips of his sighting.

38. Unknown to Rashawn's family and loved ones at the time, Rashawn had entered a WMATA station and taken a WMATA train until approximately 12:37am on October 21, 2023, when the train arrived at Glenmont station and stopped running.

39. A WMATA employee and supervisor found Rashawn remaining on the train because he did not understand that it was no longer in service. The employee instructed Rashawn to get off the train without providing further assistance despite Rashawn's visible disability and obvious confusion.

40. After that WMATA employee cleared the train and returned to the platform, the employee observed Rashawn still standing there as if he was waiting for another train. The WMATA employee told Rashawn that there were no other trains leaving out of the station and observed Rashawn heading towards the escalators.

41. Upon information and belief, WMATA internal video footage shows Rashawn then attempted to exit a Glenmont Metro Station fare gate.

42. Upon information and belief, WMATA internal video footage shows that Rashawn was unable to exit through the fare gate he initially approached and then moved to the fare gate closest the kiosk at 12:44am, where he stood awaiting assistance.

43. Upon information and belief, WMATA employee Station Manager, Devin Yelverton, was in the kiosk using the landline phone for a personal call at the time that ultimately lasted over thirty (30) minutes.

44. While Rashawn stood awaiting assistance, Mr. Yelverton looked directly at Rashawn and did not address him, instead continuing his personal call.

45. After waiting for assistance and being ignored by Mr. Yelverton, Rashawn threw his hands up in frustration and walked back further into the metro station.

46. Mr. Yelverton did not make any effort to assist or even communicate with Rashawn, the mentally disabled and non-verbal WMATA customer who was seeking his attention and assistance.

47. Upon information belief, and consistent with the findings of a WMATA investigation, Mr. Yelverton broke the WMATA rules and procedures while acting within the scope of his employment, including the following:

a. General Rule ("GR") 1.1.3 – Employees shall not permit unnecessary conversation, reading, lounging or any other action or condition of mind to divert their attention from the safe and performance of duty.
b. GR 1.1.4 – While on WMATA property employees shall refrain from holding conversations with other employees who are on duty and shall not interfere with the proper handling of customers or equipment in any way.
c. GR 1.6.2 – Failure of any employees to abide by established rules and procedures, failing to comply with the verbal instructions of supervisors, or failure to use sound judgment, regardless of the time, place, or circumstance, to compromise the safety of the public or fellow employees will result in the employee's immediate removal from service, pending an investigation. Disciplinary action will include permanent disqualification from safety sensitive positions or dismissal.
d. Metrorail Operating Rulebook ("MOR") 12.2.1 – WMATA telephones and radios shall only be used for official WMATA business, and call preference shall be given to business pertaining to train operations or emergencies.

48. By October 24, 2023, Rashawn was still missing and the case was transferred to Montgomery County Police Department Major Crimes Unit/Missing Persons/Cold Case Section.

49. By October 25, 2023, after five (5) days of disappearance, Jimmy Hall began the pain process of expanding his search to include wooded areas and dumpsters, since so much time had passed and hope that Rashawn could still be alive was dwindling.

50. Finally, six (6) days after learning of Rashawn's disappearance, Jimmy Hall received notice that Rashawn had been found alive.

51. On October 26, 2023, around 9:47 p.m., MCPD officer Joe Green was conducting a search for Rashawn at the Glenmont Metro train station. A station manager informed Officer Green that the emergency exit doors at the station opened into a room, but such doors lock from the inside upon closing. Officer Green and the station manager went to search the rooms together.

52. The officer pushed the exit door and found an empty storage room with a second doorway that leads to another stairway and emergency exit ladder with access to the street. Upon opening the second door, the officer found Rashawn.

53. As was later discovered, in the early morning hours following the day of Rashawn's disappearance, Rashawn had ridden the Metrobus and then a WMATA train for several hours to the Glenmont train station, went inside the station and back out, and then went back inside the station and into the storage room, where he would remain trapped in horrific conditions for the next six (6) days.

54. The room that Rashawn was ultimately found in was referred to as an "area of refuge" or "AOR" by WMATA.

55. Upon information and belief, no WMATA agent or employee had searched the AOR earlier that day or during the several days prior to discovering Rashawn on October 26, 2023, even though he had been initially reported missing on October 20, 2023.

56. The failure of the WMATA Station Managers consistent failure to search the room violated terms of the WMATA rules and protocols, including, but not limited to:

a. WMATA Standard Operating Procedure 46.5.1.12, which states: "Closing Station Managers shall make visual inspection of the mezzanine and platform area of the station, which includes walking the station platform from end gate to end gate, to ensure that no customers are in the station. Pay special attention to areas of the station where confused customers or customers with diminished capacity might sleep."

b. WMATA Standard Operating Procedure 54.5.2, which states: "The Opening Station Manager's daily responsibilities include: AOR or ASOD location inspection to ensure any doors are secure."

c. WMATA Standard Operating Procedures 54.4.3, which states: "Station Managers shall inspect the AOR and/or ASOD daily and ensure that the room is empty and report any issue to MOC [Maintenance Operations Control]. Station Managers shall document findings on the RTRA Station Inspection Checklist.

57. Upon information and belief, WMATA employees were not sufficiently or consistently monitoring video footage of the Glenmont Metro Station.

58. On the evening of October 26, 2023, Supervisor C. Beverly notified Assistant Superintendent Chase that an unknown person, later identified as Rashawn, was found at Glenmont Station.

59. The failures of WMATA to properly respond to the report of Rashawn's disappearance, to follow their own rules and procedures in monitoring and securing the station, to properly respond to a confused customer with diminished capacity in need, and to otherwise fulfill its duties of maintaining a safe and secure station caused Rashawn to become entrapped in a locked room of WMATA premises and needlessly delayed his discovery and access to help.

60. Rashawn could have been found the same night he went missing if WMATA strictly adhered to its established protocols, which include: thoroughly checking rooms at each station and ensuring continuous monitoring of camera footage.

61. A lapse in these critical procedures led to a delay in locating Rashawn, underscoring the importance of following protocol to prevent such oversights in the future.

62. Rashawn endured a harrowing ordeal. He had been trapped inside a locked room for six grueling days without access to food, water, or sanitation.

63. Rashawn was found covered in urine and feces and was severely dehydrated, physically depleted, and in poor condition.

64. The conditions that Rashawn endured were dire, as he spent the entirety of his unnecessary confinement in complete darkness, isolated and vulnerable.

65. The lack of light and basic hygiene led to an infestation of insects in his hair, further exacerbating his suffering and deteriorating condition.

66. This tragic situation highlights the profound impact of the prolonged neglect and underscores the urgent need for improved safety protocols and response measures to prevent such incidents.

67. For six agonizing days, Rashawn was left in conditions that amounted to solitary confinement. He was deprived of basic necessities and had no access to food or water, leaving him severely dehydrated and physically weakened.

68. The absence of hygienic care compounded his suffering, as he was unable to maintain even minimal cleanliness, resulting in unsanitary conditions that further degraded his physical and emotional well-being.

69. Trapped in complete darkness, Rashawn experienced the profound psychological toll of isolation, with no sense of time or connection to the outside world.

70. Rashawn was given water at the station and then immediately transported to Holy Cross Hospital by Montgomery County Fire and Rescue Service, where he was treated for dehydration.

71. The incident has had a profound effect on Rashawn and has significantly impacted his behavior and daily routines.

72. The incident has caused drastic changes in Rashawn's sleep pattern. Since the incident, he stays awake at night, often rocking back and forth, turning lights on, and wandering into other rooms.

73. Since the incident, complete darkness has become intolerable for Rashawn, as it triggers panic episodes during which he wakes up in distress, frantically running into rooms to find someone for reassurance.

74. Since the incident, Rashawn's eating habits have also shifted noticeably.

75. Rashawn now often sits and stares at his food rather than eating it, taking only a few bites before stopping or sitting for extended periods without touching his meal.

76. Additionally, he now experiences sudden, unprovoked outbursts of screaming, with no apparent or identifiable triggers.

77. Rashawn's attention span has markedly diminished as well.

78. Tasks that were once routine for Rashawn now require continuous reminders and redirection. For example, he needs consistent prompting to wash his hands, make his bed, or

clean up after himself.

79. Even with guidance, he often forgets what he is supposed to do and struggles to maintain focus on the task at hand.

80. These changes underscore the profound psychological and emotional toll the incident has taken on Rashawn, manifesting in disrupted routines, impaired focus, and altered behavior.

81. He requires ongoing support and interventions to help him cope with these challenges and begin the journey toward recovery.

## CAUSES OF ACTION

### COUNT I
### Negligence
### Plaintiffs v. WeAchieve, Inc.

82. Plaintiffs Jimmy Hall and Christina Hall, as Co-Guardian of the Person and Property of Rashawn Williams, hereby incorporate Paragraphs 1-81 of this Complaint with the same effect as if herein fully set forth.

83. Defendant, WeAchieve, Inc., and its agents, servants and employees, all of whom were acting within the course and scope of their employment, had a duty to exercise that degree of care and skill exercised by other health care providers, group domiciliary care facilities, nurses and technicians with similar training and experience and situated in the same or similar communities and caring for patients under the same or similar circumstances.

84. Defendant WeAchieve, Inc., and its agents, servants and employees, all of whom were acting within the course and scope of their employment, negligently failed to exercise reasonable care and skill and breached the standard of care with the following acts or omissions:

a. Neglecting to provide proper care and attention to Rashawn Williams in accordance with his established supervision requirements;

b. Failing to comply with the standard of care regarding safe staffing ratios;

c. Failing to provide a reasonably safe temporary residence and/or temporary residence with reasonably safe measures and practices implemented;

d. Failing to appropriately respond to Rashawn Williams' departure from supervision;

e. Failing to promptly notify Rashawn Williams' parents and guardians of his disappearance and to take other remedial measures within a reasonable time period; and

f. Other breaches of the standard of care and other acts of negligence as will be revealed in the course of discovery.

85. Such acts of negligence constitute a breach by WeAchieve, Inc. of the applicable standard of care.

86. As a direct and proximate result of the negligence and violations of the standard of care by WeAchieve, Inc., and its agents, servants and employees, both actual and apparent, the disabled Plaintiff, Rashawn Williams suffered serious injuries and emotional trauma, without any negligence on his part contributing thereto.

87. As a result of such injuries, the disabled Plaintiff, Rashawn Williams, incurred damages which include, but are not limited to, past and future medical and rehabilitation expenses, temporary and/or permanent impairment of his physical capacity, past and future impairment of his usual and customary activities, emotional distress, past and future conscious pain and suffering, as well as the past and ongoing inconvenience associated with his injuries and the resultant medical treatment.

88. The disabled Plaintiff, Rashawn Williams, also alleges that he will continue in the future to incur medical expenses in connection with said injuries and will in the future suffer pecuniary loss. In addition, the disabled Plaintiff Rashawn Williams will continue to endure great mental anguish and other damages.

89. All such damages, injuries, and/or losses – past, present, and prospective – were caused by the negligent acts of Defendant WeAchieve, Inc. as described herein.

90. The disabled Plaintiff, Rashawn Williams, was in no way contributorily negligent, nor did he assume the risk of his injuries.

WHEREFORE, the Plaintiffs Jimmy Hall and Christina Hall, as Co-Guardians of the Person and Property of Rashawn Williams, respectfully demand judgment against Defendant WeAchieve, Inc. for monetary damages, together with the costs of this action, which damages exceed $30,000.00 and/or are greater than the limit of the concurrent jurisdiction of the District Court.

**COUNT II**
**Negligence**
**Plaintiffs v. WMATA**

91. Plaintiffs Jimmy Hall and Christina Hall, as Co-Guardian of the Person and Property of Rashawn Williams, hereby incorporate Paragraphs 1-90 of this Complaint with the same effect as if herein fully set forth.

92. Defendant WMATA, and its agents, servants and employees, all of whom were acting within the course and scope of their employment, had a duty to exercise that degree of care and skill exercised by other metro rail employees with similar training and experience and situated in the same or similar communities and caring for patients under the same or similar circumstances.

93. Defendant WMATA, and its agents, servants and employees, all of whom were acting within the course and scope of their employment, negligently failed to exercise reasonable care and skill and breached the standard of care outlined in the Washington Metropolitan Area Transit Authority Standard Operating Procedures Handbook, with the following acts or omissions:

a. Violating rules and policies which prevented Rashawn Williams' access to employee attention and assistance;

b. Negligently failing to provide sufficient care to Rashawn Williams despite his visual and observable impairments and clear need for assistance;

c. Failing to properly respond to the report of Rashawn Williams' disappearance;

d. Failing to provide proper care attention to Rashawn Williams in accordance with their established supervision requirements;

e. Failing to inspect the AOR and/or ASOD daily and ensure that the room is empty and report any issues to MOC in compliance with WMATA Standard Operating Procedures Handbook Rule 54.4.3;

f. Failing to inspect AOR or ASOD location and ensure any doors are secure in compliance with WMATA Standard Operating Procedures Handbook Rule 54.5.2;

g. Failing to visually inspect the mezzanine and platform area of the station, which includes walking the station platform from end gate to end gate, to ensure that no customers are in the station in compliance with WMATA Standard Operating Procedures Handbook Rule 46.5.1.12;

h. Failing to pay sufficient attention to areas of the station where confused customers or customers with diminished capacity might sleep in compliance with WMATA Standard Operating Procedures Handbook Rule 46.5.1.12; and

i. Other breaches of the standard of care and other acts of negligence as will be revealed in the course of discovery.

94. As a direct and proximate result of the negligence and violations of the standard of care by WMATA and its agents, servants and employees, both actual and apparent, the disabled Plaintiff, Rashawn Williams suffered serious injuries and emotional trauma, without any negligence on his part contributing thereto.

95. As a result of such injuries, the disabled Plaintiff, Rashawn Williams, incurred damages which include, but are not limited to, past and future medical and rehabilitation expenses, temporary and/or permanent impairment of his physical capacity, past and future impairment of his usual and customary activities, emotional distress, past and future conscious pain and suffering, as well as the past and ongoing inconvenience associated with his injuries and the resultant medical treatment.

96. The disabled Plaintiff, Rashawn Williams, also alleges that he will continue in the future to incur medical expenses in connection with said injuries and will in the future suffer pecuniary loss. In addition, the disabled Plaintiff Rashawn Williams will continue to endure great mental anguish and other damages.

97. All such damages, injuries, and/or losses – past, present, and prospective – were caused by the negligent acts of Defendant WMATA as described herein.

98. The disabled Plaintiff, Rashawn Williams, was in no way contributorily negligent, nor did he assume the risk of his injuries.

WHEREFORE, the Plaintiffs Jimmy Hall and Christina Hall, as Co-Guardians of the Person and Property of Rashawn Williams, respectfully demand judgment against Defendant WMATA for monetary damages, together with the costs of this action, which damages exceed $30,000.00 and/or are greater than the limit of the concurrent jurisdiction of the District Court.

**COUNT III**
**Violation of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12131, *et seq.***
**Plaintiffs v. WMATA**

99. Plaintiffs Jimmy Hall and Christina Hall, as Co-Guardian of the Person and Property of Rashawn Williams, hereby incorporate Paragraphs 1-98 of this Complaint with the same effect as if herein fully set forth.

100. Under Title II of the Americans with Disabilities Act of 1990 (the "ADA"), "no qualified individual with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

101. The disabled Plaintiff, Rashawn Williams, is an individual with a physical or mental impairment that limits one or more major life activity, meeting the definition of disability within 42 U.S.C. § 12102(1).

102. Defendant WMATA is a public entity covered by, *inter alia*, Title II of the ADA, 42 U.S.C. § 12131(1)

103. Defendant WMATA is further governed by Title II of the ADA because Title II covers public transportation service provided by public entities, including bus, rail, and commuter and intercity rail. 42 U.S.C. § 12161, *et seq*.

104. WMATA is required to adhere to the Attorney General's ADA regulations governing communication with the disabled by a public entity, *inter alia*, 28 C.F.R. § 35.160 providing, in part:

> (a)(1) A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others.
>
> . . .
>
> (b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.
>
> (2) The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

105. WMATA is further required to adhere to the Secretary of Transportation's ADA regulations, *inter alia*, 49 C.F.R. § 37.173 requiring that public transportation providers "ensure that personnel are trained to proficiency, as appropriate to their duties, so that they . . . properly assist and treat individuals with disabilities who use the service in a respectful and courteous way."

106. Under 49 C.F.R. § 37.167(f), WMATA is required to "make available to individuals with disabilities adequate information concerning transportation services."

107. Under 49 C.F.R. § 37.161(a), WMATA is required to "maintain in operative condition those features of facilities and vehicles that are required to make the vehicles and facilities readily accessible to and usable by individuals with disabilities."

108. WMATA violated the ADA, *inter alia*, by

a. Failing to ensure that communication with Rashawn Williams was sufficiently effective;

b. Failing to provide Rashawn Williams with adequate information concerning WMATA's transportation services, including alternative transportation services available, direction as to how to exit the station after services for the particular train were discontinued;

c. Faling to take any steps to ensure Rashawn Williams had the means or information to exit the station and/or that he was able to, in fact, exit the station as required;

d. Neglecting Rashawn Williams, despite his observable disability, by failing to acknowledge his requests for attention and for assistance for an extended period of time;

e. Neglecting Rashawn Williams, despite his observable disability, by failing to ensure he was able to safely and successfully exit the station, or even notice that he failed to exit the station.

f. Failing to treat Rashawn Williams in a respectful and courteous manner in light of his visible or otherwise observable disability;

g. Failing to abide by its own rules, regulations, and protocols concerning the visual inspection certain areas, such as the platform and areas of refuge, in which confused individuals or individuals with disabilities may mistakenly find themselves;

h. Failing to provide Rashawn Williams with the necessary services to afford him, as an individual with disabilities, an equal opportunity to participate in the benefits of WMATA's services; and

i. Other acts and omissions in violation of the law and federal regulations which will be revealed in the course of discovery.

109. As a direct and proximate result of the foregoing, the disabled Plaintiff, Rashawn Williams, suffered and continues to suffer serious injuries and emotional trauma.

110. As a result of such injuries, the disabled Plaintiff, Rashawn Williams, incurred damages which include, but are not limited to, past and future medical and rehabilitation expenses, temporary and/or permanent impairment of his physical capacity, past and future impairment of his usual and customary activities, emotional distress, past and future conscious pain and suffering, as well as the past and ongoing inconvenience associated with his injuries and the resultant medical treatment.

111. As a further direct and proximate result of the foregoing violations of the ADA, Rashawn Williams has been prevented and will continue to be prevented from performing his usual daily activities and obtaining the full enjoyment of life and access to public services.

WHEREFORE, the Plaintiffs Jimmy Hall and Christina Hall, as Co-Guardians of the Person and Property of Rashawn Williams, respectfully demand judgment against Defendant WMATA for monetary damages, together with the costs of this action, which damages exceed $30,000.00 and/or are greater than the limit of the concurrent jurisdiction of the District Court.

## COUNT IV
## Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794
## Plaintiffs v. WeAchieve, Inc. and WMATA

112. Plaintiffs Jimmy Hall and Christina Hall, as Co-Guardian of the Person and Property of Rashawn Williams, hereby incorporate Paragraphs 1-111 of this Complaint with the same effect as if herein fully set forth.

113. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), prohibits discrimination against persons with disabilities by any program or activity receiving federal financial assistance.

114. Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States, as defined in Section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" under any such program or activity. 29 U.S.C. § 794(a).

115. Further, Section 504 prohibits methods of administration that defeat or substantially impair accomplishment of the program's objectives.

116. A "program or activity" is defined, in relevant part, as "a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other . . . local government entity) to which the assistance is extended, in the case of assistance to a State or local government; . . . [or] an entire corporation, partnership, or other private organization . . . which is principally engaged in the business of providing . . . health care." 29 U.S.C. §§ 794(b)(1)(A), 794(b)(3)(A)(ii).

117. Defendant WeAchieve, Inc. receives federal financial assistance and is a "program or activity" as defined by 29 U.S.C. § 194(b)(1).

118. Defendant WMATA received federal financial assistance and is a "program or activity" as defined by 29 U.S.C. § 194(b)(1).

119. The disabled Plaintiff, Rashawn Williams, has disabilities within the meaning of Section 504 and is therefore guaranteed the protections conferred by the statute.

120. Defendants, by their actions and omissions as set forth herein, have violated the rights of Rashawn Williams conferred by Section 504 and its implementing regulations.

121. The disabled Plaintiff, Rashawn Williams, was excluded from participation in, was denied the benefits of, and/or was subjected to discrimination solely by reason of his disability by Defendants.

122. As a direct and proximate result of the foregoing, the disabled Plaintiff, Rashawn Williams, suffered and continues to suffer serious injuries and emotional trauma.

123. As a result of such injuries, the disabled Plaintiff, Rashawn Williams, incurred damages which include, but are not limited to, past and future medical and rehabilitation expenses, temporary and/or permanent impairment of his physical capacity, past and future impairment of his usual and customary activities, emotional distress, past and future conscious pain and suffering, as well as the past and ongoing inconvenience associated with his injuries and the resultant medical treatment.

124. As a further direct and proximate result of the foregoing violations of Section 504 of the Rehabilitation Act, Rashawn Williams has been prevented and will continue to be prevented from performing his usual daily activities and obtaining the full enjoyment of life and access to public services.

WHEREFORE, the Plaintiffs Jimmy Hall and Christina Hall, as Co-Guardians of the Person and Property of Rashawn Williams, respectfully demand judgment against Defendants WeAchieve, Inc. and WMATA for monetary damages, together with the costs of this action, which damages exceed $30,000.00 and/or are greater than the limit of the concurrent jurisdiction of the District Court.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues of triable fact in the foregoing complaint.

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

By:

___/s/________________________________
Timothy F. Maloney (CPL 8606010245)
tmaloney@jgllaw.com
Bridget Cardinale, Esquire (CPL 2211070011)
bcardinale@jgllaw.com
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
(301) 220-2200 (phone)
(301) 220-1214 (facsimile)

*Counsel for Plaintiffs*
*Jimmy Hall and Christina Hall*
*as Co-Guardian of the Person and Property of*
*Rashawn Williams*