**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JIMMY HALL *et al*.,

    Plaintiffs,

    v.

WEACHIEVE, INC. *et al*.,

    Defendants.

                 \*

                 \*            Civil Action No. 8:26-cv-00142-PX

                 \*

                 \*

                \*\*\*

## <u>MEMORANDUM OPINION</u>

This case concerns Rashawn Williams ("Williams"), a young man with Downs Syndrome, who wandered from his group home and became trapped for six days at Glenmont Metro Station without food, water, light, or human contact. ECF No. 10. Williams' guardians, Jimmy and Christina Hall, have filed suit against his residential care provider, WeAchieve Inc. ("WeAchieve"), and the Washington Metropolitan Area Transit Authority ("WMATA") for injuries that Williams sustained as a result. *Id*. WMATA moves to dismiss the claims against it on immunity and sufficiency grounds. ECF No. 16. The issues are fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motion is DENIED.

### I.    Background

Williams suffers from a particularly severe form of Downs Syndrome that limits his cognitive function and ability to communicate. Because Williams requires constant supervision, he lives at a group home operated by WeAchieve. On October 20, 2023, he left the group home, unbeknownst to the staff. He found his way to a Metro station, boarded a train, and rode for hours. ECF No. 10 ¶¶ 25–27. When it came time for the Metro to close for the evening, a Metro employee told Williams to get off the train at the Glenmont Metro Station. *Id*. ¶¶ 28, 38–40. Despite

1

Williams' "visible disability and obvious confusion," the WMATA employee did not try to assist Williams in any way. *Id.* ¶ 39.

After Williams disembarked, he waited for another train, and when none came, he headed down the escalator and tried to exit the station. ECF No. 10 ¶ 42. Williams, however, could not figure out how to work the fare gates at the exit, so he went back inside the station. *Id.* ¶¶ 40–42. Williams next approached the nearest Metro kiosk and waited for help. The station manager inside the kiosk saw Williams but ignored him and instead took a personal phone call for 30 minutes while Williams stood nearby waiting for help. *Id.* ¶¶ 42–44. Eventually, Williams grew frustrated and walked further into the station. *Id.* ¶ 45.

Williams found a door marked "emergency exit," which opened into another room that locked from the inside. Williams walked through the emergency exit doors and became trapped in the small room that WMATA calls an Area of Refuge ("AOR"). ECF No. 10 ¶¶ 51–52, 54, 62. WMATA's written policies command that its personnel inspect the AOR daily. *Id.* ¶ 56. Additionally, WMATA personnel are directed to inspect the mezzanine and platform area of the station "from end gate to end gate," paying "special attention to areas of the station where confused customers or customers with diminished capacity might sleep." *Id.* Evidently, no Metro personnel inspected the AOR on the night Williams became trapped, or for *six days* thereafter.

While inside the AOR, Williams had no light, water, food or toilet facilities. Montgomery County Police Department found Williams severely dehydrated and undernourished, "covered" in his own urine and feces, with bugs nesting in his hair. ECF No. 10 ¶¶ 62–65. Although Williams made a full physical recovery, he has been deeply traumatized from the experience. *Id.* ¶ 71. To this day, Williams cannot sleep. *Id.* ¶ 72. He often keeps lights on in his room and either rocks back and forth or wanders around. *Id.* He cannot tolerate darkness, struggles to eat consistently,

2

and is prone to "unprovoked outbursts." *Id.* ¶¶ 72–81.

From this, the Halls sue WMATA for negligence (Count II) and denial of public accommodation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Counts III and IV). ECF No. 10 ¶¶ 91–124.  WMATA now moves to dismiss all allegations against it.  ECF No. 16. The Court begins with the negligence claim.

## II.    Analysis

### A.    Negligence

WMATA first argues that the negligence claim must be dismissed because, as a state sovereign, it enjoys Eleventh Amendment immunity from suit.  ECF No. 17 at 4–10.  Because immunity implicates this Court's power to hear the case, the motion is analyzed as one to dismiss for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  *See also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009); *Hammons v. Univ. of Maryland Med. Sys. Corp.*, 551 F. Supp. 3d 567, 579 (D. Md. 2021) (citing *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018)).  As WMATA seeks the protection of sovereign immunity, it must demonstrate that immunity applies.  *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. South Carolina Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)). The Court "may consider evidence outside the pleadings" to determine jurisdiction without converting the proceeding to one for summary judgment.  *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  But the Court cannot dismiss for lack of jurisdiction unless "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Id.* (citing *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987)).

Clearly, WMATA, as an interstate agency, enjoys Eleventh Amendment immunity from citizen suits brought in federal court. *See Delon Hampton & Assocs., Chartered v. Washington Metro. Area Transit Auth.*, 943 F.2d 355, 359 (4th Cir. 1991). However, pursuant to the interstate compact governing WMATA, it waives immunity for certain torts "committed in the conduct of any proprietary function," but not for "torts occurring in the performance of a governmental function." MD. CODE. ANN., Transp. Law § 10-204(80). To determine whether alleged tortious conduct is proprietary versus governmental, the Court first asks whether the challenged government function is "quintessential[ly] governmental," like firefighting and law enforcement. *Smith v. Washington Metro. Area Transit Auth.*, 290 F.3d 201, 207 (4th Cir. 2002). *See Burns v. WMATA*, 488 F. Supp. 3d 210, 216 (D. Md. 2020). If yes, then WMATA is immune from suit. *Pierce v. WMATA*, Civil Action No. DKC 09-1917, 2010 WL 4485826, at *4 (D. Md. 2010) (internal citations omitted).

For all other functions, the Court must next determine whether the challenged function is "discretionary" or "ministerial." *Smith*, 290 F.3d at 207. Discretionary functions are those that "'involve[] an element of judgment or choice'" and are "'grounded in social, economic, and political policy.'" *Id.* at 208–09 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). For these functions, WMATA enjoys immunity. Ministerial functions, on the other hand, relate to a proscribed course of conduct that WMATA employees must follow, leaving "no room for discretion." *Whiteru v. WMATA*, 258 F. Supp. 3d 175, 184 (D.D.C. 2017) (citing *KiSKA Const. Corp. v. WMATA*, 321 F.3d 1151, 1159 (D.C. Cir. 2003)); *see Robinson v. WMATA*, 858 F. Supp. 2d 33, 38 (D.D.C. 2012) (finding no immunity where Metrobus driver failed to check that passengers were secure and start bus slowly because WMATA policy specifically required those non-discretionary actions). For those functions, WMATA has waived immunity.

With this standard in mind, the Court turns to this case. WMATA first attempts to convince the Court that the negligence claim concerns WMATA's quintessentially "core police function" in providing adequate security.  ECF No. 17 at 8.  WMATA misconstrues the claim.  It is instead a straightforward breach of a duty of care WMATA owes as a common carrier toward its passengers.  Further, the challenged functions are decidedly ministerial in that they involve no amount of discretion.  Per WMATA's written policies, personnel *must* inspect the AOR daily, ECF No. 10 ¶ 56, and *must not* take personal calls at the expense of assisting passengers, *id*. ¶¶ 55–56.  The failure to follow these nondiscretionary directives, moreover, caused Williams' injuries.  *Id*. ¶ 47.  Thus, because the negligence claim rests on WMATA's breach of non-discretionary, ministerial functions, WMATA is not immune from suit.  *See, e.g.*, *Afanasieva v. WMATA*, 588 F. Supp. 3d 99, 108–09 (D.D.C. 2022).  *See Whiteru*, 258 F. Supp. 3d at 185–86.

WMATA alternatively argues the negligence claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Such a motion tests the sufficiency of the claim.  *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The Court accepts the complaint facts as true and most favorably to the nonmovant.  *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  For the claim to survive challenge, the factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citations omitted).

To make plausible a negligence claim, some complaint facts must show that: (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, (3) the plaintiff suffered actual injury, and (4) the injury proximately resulted from the defendant's breach.  *Baltimore Gas & Elec. Co. v. Lane*, 656 A.2d 307, 311 (Md. 1995), over*ruled on other grounds*

*by Baltimore Gas & Elec. Co. v. Flippo*, 705 A.2d 1144 (Md. 1998).[1]  WMATA contends that it owed no duty of care to Williams, and even if it did, that it did not breach that duty.  ECF No. 17 at 12–14.  For this argument, WMATA mischaracterizes the claim as a premises liability matter, and relatedly argues that once Williams entered the AOR, he was a "trespasser" for which WMATA owes no duty of care.  ECF No. 10 ¶¶ 91–98; ECF No. 17 at 12.

To begin, the Amended Complaint plainly avers that WMATA breached a general duty of care as a common carrier that it maintains toward its passengers both on the trains and within the station.  *E.g.*, *WMATA v. Reading*, 674 A.2d 44, 49 (Md. Ct. Spec. App. 1996); *Kaplan v. Baltimore & O. R. Co.*, 113 A.2d 415, 416–17 (Md. 1955); *Leatherwood Motor Coach Tours Corp. v. Nathan*, 579 A.2d 797, 800 (Md. Ct. Spec. App. 1990); *Feakes v. WMATA*, Civil Case No. 8:23-2145-AAQ, 2025 WL 2653155, at *12 (D. Md. 2025) (citing *Walker v. National R.R. Passenger Corp.*, 703 F. Supp. 2d 495, 501–02 (D. Md. 2010)).  Although the exact contours of the duty will be explored in discovery, the Court at this juncture cannot agree that WMATA bore *no* duty of care to Williams.

Nor will the Court conclude as a matter of law that WMATA owes no duty because Williams "trespassed" into the AOR.  *Cf. Washington, B. & A. R. Co. v. State*, 116 A. 911, 912 (Md. 1922).  Williams went through a door marked "emergency *exit*" which would lead a reasonable passenger to believe he could go beyond the door itself.  That Williams next found himself in a room that WMATA calls an "area of *refuge*" further suggests that passengers may very well have occasion to enter the room in an emergency.  This is quite likely why Metro personnel are required to inspect the area *every day*.  Thus, when construing all facts most favorably to WMATA, Willams cannot be considered a "trespasser."

---

[1] The parties do not dispute that Maryland law applies because the injuries occurred in Maryland.  *See Doctor's Weight Loss Centers, Inc. v. Blackston*, 319 A.3d 1102, 1104 (Md. 2024).

Nor can the Court take seriously WMATA's contention that if it owed Williams a duty of care, it had not breached that duty. ECF No. 17 at 14; ECF No. 24 at 6–7. Indeed, WMATA employees ignored Williams' clear signs of distress, allowing him to wander into the AOR. WMATA next failed to inspect the AOR for six days, despite WMATA's own written policy mandating daily inspections. From this, the Court easily finds plausible WMATA's breach of duty of care it owed to Williams. The Court denies WMATA's motion to dismiss Count II.

### B.    Disability Discrimination (Counts III and IV)

Next, WMATA argues that the discrimination claims fail because no facts make plausible that WMATA denied Williams access to public services on account of his disability. ECF No. 17 at 14, 18.[2] The Court analyzes the sufficiency of the ADA and Section 504 claims together because the elements are "substantially the same." *Seremeth v. Bd. of Cnty. Comm'rs*, 673 F.3d 333, 336 n.1 (4th Cir. 2001); *see also Koon v. North Carolina*, 50 F.4th 398, 403 n.2 (4th Cir. 2022). To state a claim for disability discrimination, some facts must make plausible that the plaintiff (1) suffers a disability; (2) was otherwise qualified for the benefit of a public program, service, or activity; and (3) defendant denied plaintiff that program, service, or activity "on the basis of his disability." *Id.* (citing *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502–03 (4th Cir. 2016)).[3]

Further, because the Halls seek compensatory damages, the alleged denial must be "intentional," which requires showing the defendant denied the benefits with "deliberate indifference." *Basta v. Novant Health Inc.*, 56 F.4th 307, 317–18 (4th Cir. 2022). To plead

---

[2] WMATA does not argue that Eleventh Amendment immunity bars the discrimination claims. Given that Eleventh Amendment immunity "does not automatically destroy original jurisdiction," and instead "grants the State a legal power to assert a sovereign immunity defense," unless the defendant argues immunity, "a court can ignore it." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998) (internal citations omitted). *But see Deville v. Washington Metro. Area Transit Auth.,* 770 F. Supp. 3d 111, 118 (D.D.C. 2025) (sua sponte dismissing ADA claim for money damages as barred by Eleventh Amendment immunity).

[3] The Rehabilitation Act also requires that the defendant receive federal funds, 29 U.S.C. § 794(a). WMATA does not dispute that it is a recipient of such funding. ECF No. 17 at 18; ECF No. 20 at 22.

deliberate indifference, some facts must make plausible that the public official knew his denial of a public service was "substantially likely" to violate the plaintiff's federally protected rights, and the official nonetheless denied the service "despite that knowledge." *Koon*, 50 F.4th at 406 (internal citations omitted).

WMATA first argues that it did not deprive Williams of a public service because Williams was allowed to ride the trains. ECF No. 17 at 15. But plainly, protection of public services extends beyond the mere riding of the trains. Indeed, the plain language of the Rehabilitation Act defines a covered "program or activity" to include "*all* of the operations of" the entity. 29 U.S.C. § 794(b) (emphasis added). And with good reason. Under WMATA's reading, the "service" or "benefit" it provides would begin and end at the Metro train doors, and not extend to the many other inter-related services on which disabled passengers depend to safely access the trains. Because WMATA fails to convince the Court that provision of those related services necessary to access the trains somehow falls beyond the protection of the ADA and Rehabilitation Act, the claims will not be dismissed on this basis. *See Seremeth*, 673 F.3d at 338.

WMATA next contends that no facts make plausible it withheld services "by reason of" Williams' disability. ECF No. 17 at 15. For this element, a plaintiff must show he was denied "meaningful access" to a benefit or service of a public entity. *Koon*, 50 F.4th at 406. One way an entity denies meaningful access is when it fails to make reasonable accommodations necessary to allow the disabled person an "opportunity to participate" in the benefit or service "equal to that afforded others." *Lamone*, 813 F.3d at 506–07 (quoting See 28 C.F.R. § 35.130(b)(1)(ii)); *see also Koon*, 50 F.4th at 406. Relatedly, the plaintiff must aver "a reasonable modification to the challenged public program that will allow [] the meaningful access they seek." *Lamone*, 813 F.3d at 507. A proposed modification is reasonable so long as it does not create an undue burden for

the entity. *Koon*, 50 F.4th at 405–06 (prison denied physically disabled inmate access to prison library by showing ease of modification through first floor access). *See also Seremeth*, 673 F.3d at 337; *Basta*, 56 F.4th at 316.

When viewing the Amended Complaint facts most favorably to the Halls, WMATA denied Williams meaningful access by refusing to communicate with him in a manner that would have helped him exit the station safely and similarly to non-disabled customers. ECF No. 10 ¶ 108. Instead, the station manager ignored Williams for thirty minutes while Williams grew more confused and agitated. Further, the averred accommodation—a modicum of basic communication with Williams to ensure he left the station safely—can hardly be considered "burdensome" to WMATA. ECF No. 10 ¶¶ 43–46. Thus, the Amended Complaint makes plausible that WMATA denied Williams basic accommodations on account of his disability.

WMATA lastly argues a failure to plead denial of accommodations with deliberate indifference. ECF No. 17 at 17. Again, the court cannot agree. Williams' Downs Syndrome and related disabilities are obvious. Confused and alone, Williams approached the station manager for help. And yet, the manager chose to ignore Williams in favor of taking a personal phone call *for 30 minutes*, while Williams stood nearby. ECF No. 10 ¶¶ 39, 44. The manager's callous disregard of Williams' needs cannot be palmed off as mere negligence. It is instead sufficient to make plausible a denial of reasonable accommodation with deliberate indifference. *See, e.g.*, *Smith v. City of Greensboro*, 1:19CV386, 2020 WL 1452114, at *13 (M.D.N.C. Mar. 25, 2020) (finding that knowledge of the need for accommodation can be established by observing an "obvious" disability, like when a person uses a wheelchair or is deaf); *Estate of LeRoux v. Montgomery Cty., Maryland*, Civil Action No. 8:22-856-AAQ, 2025 WL 2997563, at *12, n.4 (D. Md. Oct. 24, 2025); *Harford Cty. Branch of the NAACP v. Gahler*, Civil Case No. 1:26-cv-00239-JMC, 2026

9

WL 1719352, at *15 (D. Md. June 15, 2026).[4]  Counts III and IV, therefore, will not be dismissed.

### III.   Conclusion

Based on the foregoing, the motion to dismiss brought by Defendant Washington Metropolitan Area Transit Authority at ECF No. 16 is DENIED.

A separate order follows.

|  |  |
|---|---|
| ___8/4/2026_____ | _____/s/_____ |
| Date | Paula Xinis |
|  | United States District Judge |

---

[4] Relatedly, the Court rejects WMATA's argument that no jury trial right attaches to the discrimination claims for failure to plead intentional discrimination.  ECF No. 17 at 21.  Because the Halls plausibly aver denial of a public benefit with deliberate indifference, they may pursue compensatory damages, and thus, are entitled to a jury trial. *See Pandazides v. Virginia Bd. of Educ.,* 13 F.3d 823, 832 (4th Cir. 1994).