## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| JIMMY HALL<br>as Co-Guardian of the Person and Property of<br>RASHAWN WILLIAMS, a disabled adult<br>11717 Devilwood Drive<br>Potomac, Maryland 20854 | * <br> * <br> * <br> * | C-15-CV-25-005213 <br><br> Case No. _____ |
| and | * | |
| CHRISTINA HALL<br>as Co-Guardian of the Person and Property of<br>RASHAWN WILLIAMS, a disabled adult<br>11717 Devilwood Drive<br>Potomac, Maryland 20854 | * <br> * <br> * | |
| Plaintiffs, | * | |
| v. | * | |
| WEACHIEVE, INC.<br>10501 New Hampshire Ave.<br>Silver Spring, MD 20903 | * <br> * | |
| Serve On:<br>WeAchieve, Inc.<br>c/o THE CORPORATION TRUST<br> INCORPORATED<br>2405 York Road<br>Suite 201<br>Lutherville Timonium, Maryland 21093-2264 | * <br> * <br> * <br> * | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## COMPLAINT AND JURY DEMAND

COME NOW, the Plaintiffs, Jimmy Hall and Christina Hall, as Co-Guardians of the

Person and Property of Rashawn Williams, by and through counsel, Timothy F. Maloney,

Bridget Cardinale, Esq., and Joseph, Greenwald & Laake, P.A., and hereby submit their claims

against the Defendant, WeAchieve, Inc., and for cause therefor state as follows:

## JURISDICTION & VENUE

1

ATTACHMENT
2

1.      This Court has jurisdiction over this matter pursuant to Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 1-501, which grants the Circuit Courts original jurisdiction over all civil actions in law and equity in which the amount in controversy exceeds $30,000, exclusive of interest and costs.

2.      Venue properly lies in Montgomery County pursuant to Md. Code Ann., CJP § 6-201.

3.      The above-titled action was originally filed in the Health Care Alternative Dispute Resolution Office ("HCADRO") on February 07, 2025. Pursuant to Md. Code Ann., CJP § 3-2A-06B, Plaintiffs filed an Election to Waive Arbitration on July 25, 2025.  A copy of Plaintiffs' Election and a copy of the HCADRO's Order of Transfer are attached hereto and incorporated by reference as **Exhibits 1** and **2**, respectively.  Having waived arbitration for their claims against WeAchieve, Inc., the Plaintiffs now file this claim before this Honorable Court.

4.      In accordance with Md. Code Ann., CJP § 3-2A-04 and applicable Maryland law, Plaintiffs filed with HCADRO two Certificates of Qualified Expert, each with an accompanying report, attached hereto as **Exhibit 3** and **4**.

## PARTIES

5.      Rashawn Williams is an adult citizen of the State of Maryland, presently residing at 11717 Devilwood Drive, Potomac, Maryland 20854.  Rashawn Williams is under a mental disability and requires round-the-clock supervision.  He has Downs Syndrome and is non-verbal.

6.      Jimmy Hall is the natural father of Rashawn Williams, disabled.  Jimmy Hall is an adult citizen of the State of Maryland, residing at 8636 Fountain Valley Drive Gaithersburg, Maryland 20866.

7.      Christina Hall is the mother of Rashawn Williams, disabled. Christina Hall is an adult citizen of the State of Maryland, residing at 8636 Fountain Valley Drive Gaithersburg, Maryland 20866.

8.      Jimmy Hall and Christina Hall were appointed Co-Guardians of the Person and Property of Rashawn Williams on August 23, 2024 by the Circuit Court for Montgomery County, Maryland.

9.      The disabled Plaintiff, Rashawn Williams, brings this action by and through his Co-Guardians, Jimmy Hall and Christina Hall.

10.     On information and belief, Defendant WeAchieve, Inc., formerly known as CHI Centers, Incorporated, is a Maryland corporation, which at all times pertinent, held itself out as facility licensed by the Maryland Development Disabilities Administration that, through its agents, servants and employees, could and would provide competent care and treatment along with residential services and supervision to adults with intellectual deficits in the State of Maryland, including but not limited to, Rashawn Williams.  Its principal office is located at 10501 New Hampshire Avenue, Silver Spring, Maryland 20903.

11.     At all times hereinafter mentioned and relevant hereto, WeAchieve, Inc. had responsibility for operating a group home residence at the Residence Inn by Marriott located at 12000 Plum Orchard Drive in Silver Spring, Maryland, its then-temporary location due to damage at its principal office caused by a fire.

12.     References hereafter to WeAchieve, Inc. include all of its agents, servants and employees.

3

13.     All of the individuals who provided medical care, attention and supervision to residential clients of the WeAchieve, Inc. location at 12000 Plum Orchard Drive in Silver Spring, Maryland, at all times hereinafter mentioned and relevant hereto, were the employees, agents and/or servants, either actual and/or apparent, of WeAchieve, Inc. and were acting within the scope of their employment and in furtherance of the business of WeAchieve, Inc. in rendering care to the disabled Claimant, Rashawn Williams, and other disabled residents.  As such, Defendant WeAchieve, Inc. is vicariously responsible for the negligent acts and omissions of all such individuals under the doctrine of *Respondeat Superior.*

## FACTS RELEVANT TO ALL CLAIMS

14.     Plaintiffs hereby incorporates Paragraphs 1-13 of this Complaint and Jury Demand with the same effect as if herein fully set forth.

15.     On October 20, 2023, the disabled Plaintiff, Rashawn Williams, who requires 24-hour supervision, was at the temporary residence provided by his group home, WeAchieve, Inc.: the Residence Inn by Marriott located at 12000 Plum Orchard Drive in Silver Spring, Maryland.

16.     Defendant, WeAchieve, Inc., by and through its agents, servants and employees, was fully aware of Rashawn's  supervision requirements. Defendant WeAchieve, Inc. and its agents, servants and employees, for consideration, expressly and impliedly promised to provide the supervision required for the safety and well-being of Rashawn.

17.     On October 20, 2023, WeAchieve, Inc. agent and employee Solenge Ble was responsible for supervising Rashawn and three other WeAchieve, Inc. residents, who also had mental and/or developmental disabilities.  Ms. Ble was the only staff member on duty at the time of the incident.

18.     This level of supervision violated reasonable supervision ratios required by the State and the applicable standard of care.

4

19. Rashawn and the other residents had recently finished eating dinner. Ms. Ble was putting dinner away when Rashawn indicated to her that he needed to use the restroom.

20. Ms. Ble told Rashawn to wait in front of Room 230 while she would retrieve a key necessary to access the restroom.

21. Ms. Ble then left the area and left Rashawn unsupervised.

22. While unsupervised, Rashawn walked down the hallway he was standing in, and towards the elevator. He entered the elevator and continued to the lobby.

23. Ms. Ble noticed Rashawn leaving the area, but did not follow after him and instead remained with the other residents.

24. Around 6:20 p.m., Rashawn passed the front desk attendant and exited the Residence Inn.

25. Rashawn made his way to the corner of Plum Orchard Drive and Cherry Hill Road and the bus stop located there. He boarded the bus that arrived and that was taking the R2 Route towards Fort Totten.

26. The front desk attendant's view of Rashawn boarding the bus would be the last confirmed sighting of him for six (6) days.

27. At the time, the only clothing Rashawn had with him was the clothing he had on, which was shoes, blue jeans, and a blue long-sleeve shirt. He did not have a phone or any technology on his person to assist with geographical locating.

28. Shortly after Rashawn's disappearance, Ms. Ble called the police, but did not call either of Rashawn's parents or guardians.

29. WeAchieve, Inc. would not notify either Jimmy Hall or Christina Hall about Rashawn's disappearance until 7:39 p.m. – over an hour after he was last seen.

30. Both Jimmy Hall and Christina Hall, as Rashawn's parents, were significantly familiar with his patterns and thought processes and could have been of important help in the immediate time period following Rashawn's disappearance.

31. Further, Jimmy Hall, as a WMATA employee, was knowledgeable of the bus routes, including the R2 Route and would have been able to travel the same Route as Rashawn in the critical time period after his leaving.

32. Around 6:41 p.m., Montgomery County Police Department (MCPD) officers arrived at the Residence Inn in response to Ms. Ble's call for missing person Rashawn Williams.

33. The officers began to search for Rashawn and to notify other agencies for assistance via BOLO (Be On the Lookout) only.

34. Jimmy Hall and Christina Hall, with the assistance of family, friends, and volunteers from the community, took their own efforts to desperately search for their son, such as by distributing flyers and pursuing tips of his sighting.

35. By October 24, 2023, Rashawn was still missing and the case was transferred to Montgomery County Police Department Major Crimes Unit/Missing Persons/Cold Case Section.

36. By October 25, 2023, after five (5) days of disappearance, Jimmy Hall began the pain process of expanding his search to include wooded areas and dumpsters, since so much time had passed and hope that Rashawn could still be alive was dwindling.

37. Finally, six (6) days after learning of Rashawn's disappearance, Jimmy Hall received notice that Rashawn had been found alive.

38. On October 26, 2023, around 9:47 p.m., MCPD officer Joe Green was conducting a search for Rashawn at the Glenmont Metro train station. A station manager informed Officer Green that the emergency exit doors at the station opened into a room, but such doors lock from the inside upon closing. Officer Green and the station manager went to search the rooms together.

39.     The officer pushed the exit door and found an empty storage room with a second doorway that leads to another stairway and emergency exit ladder with access to the street. Upon opening the second door, the officer found Rashawn.

40.     As was later discovered, in the early morning hours following the day of Rashawn's disappearance, Rashawn had ridden the Metrobus and then a WMATA train for several hours to the Glenmont train station, went inside the station and back out, and then went back inside the station and into the storage room, where he would remain trapped in horrific conditions for the next six (6) days.

41.     Rashawn could have been found the same night he went missing if WMATA strictly adhered to its established protocols, which include: thoroughly checking rooms at each station and ensuring continuous monitoring of camera footage.

42.     A lapse in these critical procedures led to a delay in locating Rashawn, underscoring the importance of following protocol to prevent such oversights in the future.

43.     Rashawn endured a harrowing ordeal. He had been trapped inside a locked room for six grueling days without access to food, water, or sanitation.

44.     Rashawn was found covered in urine and feces and was severely dehydrated, physically depleted, and in poor condition.

45.     The conditions that Rashawn endured were dire, as he spent the entirety of his unnecessary confinement in complete darkness, isolated and vulnerable.

46.     The lack of light and basic hygiene led to an infestation of insects in his hair, further exacerbating his suffering and deteriorating condition.

47.     This tragic situation highlights the profound impact of the prolonged neglect and underscores the urgent need for improved safety protocols and response measures to prevent such incidents.

48.    For six agonizing days, Rashawn was left in conditions that amounted to solitary confinement.  He was deprived of basic necessities and had no access to food or water, leaving him severely dehydrated and physically weakened.

49.    The absence of hygienic care compounded his suffering, as he was unable to maintain even minimal cleanliness, resulting in unsanitary conditions that further degraded his physical and emotional well-being.

50.    Trapped in complete darkness, Rashawn experienced the profound psychological toll of isolation, with no sense of time or connection to the outside world.

51.    Rashawn was given water at the station and then immediately transported to Holy Cross Hospital by Montgomery County Fire and Rescue Service, where he was treated for dehydration.

52.    The incident has had a profound effect on Rashawn and has significantly impacted his behavior and daily routines.

53.    The incident has caused drastic changes in Rashawn's sleep pattern.  Since the incident, he stays awake at night, often rocking back and forth, turning lights on, and wandering into other rooms.

54.    Since the incident, complete darkness has become intolerable for Rashawn, as it triggers panic episodes during which he wakes up in distress, frantically running into rooms to find someone for reassurance.

55.    Since the incident, Rashawn's eating habits have also shifted noticeably.

56.    Rashawn now often sits and stares at his food rather than eating it, taking only a few bites before stopping or sitting for extended periods without touching his meal.

57.    Additionally, he now experiences sudden, unprovoked outbursts of screaming, with no apparent or identifiable triggers.

8

58. Rashawn's attention span has markedly diminished as well.

59. Tasks that were once routine for Rashawn now require continuous reminders and redirection. For example, he needs consistent prompting to wash his hands, make his bed, or clean up after himself.

60. Even with guidance, he often forgets what he is supposed to do and struggles to maintain focus on the task at hand.

61. These changes underscore the profound psychological and emotional toll the incident has taken on Rashawn, manifesting in disrupted routines, impaired focus, and altered behavior.

62. He requires ongoing support and interventions to help him cope with these challenges and begin the journey toward recovery.

## CAUSES OF ACTION

### COUNT I
**Negligence**
**Plaintiffs v. WeAchieve, Inc.**

63. Plaintiffs Jimmy Hall and Christina Hall, as Co-Guardian of the Person and Property of Rashawn Williams, hereby incorporate Paragraphs 1-62 of this Complaint with the same effect as if herein fully set forth.

64. Defendant, WeAchieve, Inc., and its agents, servants and employees, all of whom were acting within the course and scope of their employment, had a duty to exercise that degree of care and skill exercised by other health care providers, group domiciliary care facilities, nurses and technicians with similar training and experience and situated in the same or similar communities and caring for patients under the same or similar circumstances.

65. Defendant WeAchieve, Inc., and its agents, servants and employees, all of whom were acting within the course and scope of their employment, negligently failed to exercise reasonable care and skill and breached the standard of care with the following acts or omissions:

a. Neglecting to provide proper care and attention to Rashawn Williams in accordance with his established supervision requirements;

b. Failing to comply with the standard of care regarding safe staffing ratios;

c. Failing to provide a reasonably safe temporary residence and/or temporary residence with reasonably safe measures and practices implemented;

d. Failing to appropriately respond to Rashawn Williams' departure from supervision;

e. Failing to promptly notify Rashawn Williams' parents and guardians of his disappearance and to take other remedial measures within a reasonable time period; and

f. Other breaches of the standard of care and other acts of negligence as will be revealed in the course of discovery.

66. Such acts of negligence constitute a breach by WeAchieve, Inc. of the applicable standard of care.

67. As a direct and proximate result of the negligence and violations of the standard of care by WeAchieve, Inc., and its agents, servants and employees, both actual and apparent, the disabled Plaintiff, Rashawn Williams suffered serious injuries and emotional trauma, without any negligence on his part contributing thereto.

10

68.    As a result of such injuries, the disabled Plaintiff, Rashawn Williams, incurred damages which include, but are not limited to, past and future medical and rehabilitation expenses, temporary and/or permanent impairment of his physical capacity, past and future impairment of his usual and customary activities, emotional distress, past and future conscious pain and suffering, as well as the past and ongoing inconvenience associated with his injuries and the resultant medical treatment.

69.    The disabled Plaintiff, Rashawn Williams, also alleges that he will continue in the future to incur medical expenses in connection with said injuries and will in the future suffer pecuniary loss.  In addition, the disabled Plaintiff Rashawn Williams will continue to endure great mental anguish and other damages.

70.    All such damages, injuries, and/or losses – past, present, and prospective – were caused by the negligent acts of Defendant WeAchieve, Inc. as described herein.

71.    The disabled Plaintiff, Rashawn Williams, was in no way contributorily negligent, nor did he assume the risk of his injuries.

WHEREFORE, the Plaintiffs Jimmy Hall and Christina Hall, as Co-Guardians of the Person and Property of Rashawn Williams, respectfully demand judgment against Defendant WeAchieve, Inc. for monetary damages, together with the costs of this action, which damages exceed $30,000.00 and/or are greater than the limit of the concurrent jurisdiction of the District Court.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues of triable fact in the foregoing complaint.

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

By:
　　　*/s/ Timothy F. Maloney*
　　　Timothy F. Maloney (CPL 8606010245)
　　　tmaloney@jgllaw.com
　　　Bridget Cardinale, Esquire (CPL 2211070011)
　　　bcardinale@jgllaw.com
　　　6404 Ivy Lane, Suite 400
　　　Greenbelt, MD  20770
　　　(301) 220-2200 (phone)
　　　(301) 220-1214 (facsimile)

　　　*Counsel for Claimants*
　　　*Jimmy Hall and Christina Hall*
　　　*as Co-Guardian of the Person and Property of*
　　　*Rashawn Williams*

12